UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARL M. PALAN, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 7940 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| COMMONWEALTH EDISON CO., EXELON CORPORATION, EXELON BUSINESS SERVICES COMPANY, LLC, and EXELON BUSINESS SERVICES COMPANY, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Karl Palan alleges in this suit that Commonwealth Edison ("ComEd") terminated him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* Doc. 7. ComEd and the other defendants—all corporate relatives of ComEd who can and will be ignored for ease of exposition—have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 17. The motion is granted, and this case is dismissed with prejudice.

### Background

On a motion to dismiss under Rule 12(b)(6), the court must accept the operative complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Palan's favor, but not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Palan's briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743,

1

745 n.1 (7th Cir. 2012). The facts are set forth as favorably to Palan as those materials permit. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

On March 17, 2014, ComEd fired Palan. Doc. 7 at 10. ComEd offered him a severance package that included a year's salary plus health benefits at the active employee rate, but only if Palan agreed to sign a waiver releasing all employment-related claims against not only ComEd but also Exelon Corporation (ComEd's parent) and its various subsidiaries and affiliates. *Ibid*.; Doc. 17-2 (copy of the cover letter, waiver, and healthcare plan worksheet that ComEd sent to Palan). The waiver explicitly included all claims under the ADEA and ADA. Doc. 7 at 10; Doc. 17-2 at 4, ¶¶ 2(a), (c). The waiver explicitly stated that Palan was not waiving "[c]laims arising after the date I sign this Waiver and Release." Doc. 17-2 at 5, ¶ 3(c). And the waiver stated that Palan "should consult with an attorney before signing this Waiver and Release," *id*. at 6, ¶ 11, and allowed him 21 days in which to accept the offer, with a 7-day revocation period to follow, *id*. at 6, ¶ 12.

Palan understood that if he did not sign the waiver, he would not be entitled to the severance package. Doc. 7 at 11 (alleging that "the only income available for" Palan would be the severance payment in exchange for signing the waiver); Doc. 17-2 at 4 ("In exchange for the optional severance benefits … which I acknowledge I am not otherwise entitled to receive, I knowingly and voluntarily agree to this waiver and release of claims …."); Doc. 24-1 at 6 (where Palan states in his opposition brief that his choice was between "accessing my 401k and/or pension savings during any job search" and "to at least buy a year's time … and accept the terms of the waiver contract"). Palan signed the waiver and returned it to ComEd within the 21-day deadline, and did not revoke it within the 7-day revocation period. Doc. 7 at 11; Doc. 17-2 at 6. He filed this suit in October 2014. Doc. 1.

2

**Discussion**

Defendants raise many grounds for dismissing Palan's lawsuit, but the waiver is dispositive. Although the waiver might be thought an affirmative defense and therefore an inappropriate ground on which to grant a Rule 12(b)(6) motion, *see Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, __ F.3d __, 2015 WL 1621401, at *4 (7th Cir. Apr. 13, 2015) ("Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.") (internal quotation marks omitted), Palan extensively references the waiver in his operative complaint, anticipating the affirmative defense by conceding that he signed the waiver but alleging that his consent was neither knowing nor voluntary, Doc. 7 at 10-12 (describing in detail why Palan believes the waiver is unenforceable). Given this, the court on a Rule 12(b)(6) motion may consider the waiver itself and cover letter and health care benefits worksheet accompanying the waiver, *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("the district court was correct to rely solely on the two expressive works referenced in Brownmark's amended complaint and attached to SPDS's motion, as well as the allegations in the complaint, to decide on the fair use defense"); *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 & n.1 (7th Cir. 2009) (considering a magazine article relevant to the defendants' limitations defense on a Rule 12(b)(6) motion because "it [wa]s a central component to the complaint," which anticipated the defense); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 733, 735 (7th Cir. 2002) (holding that "the district court properly considered" a form attached to the Rule 12(b)(6) motion that "contains a limitation of remedies provision that, were it part of the contract, would have barred the relief [the plaintiff] sought in its second amended complaint"); *Rzepiennik v. Archstone-Smith, Inc.*, 331 F. App'x 584, 588 (10th Cir.

2009) (same), and determine whether the waiver defeats the suit, *see Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010) ("if it is plain from the complaint that the [affirmative] defense is indeed a bar to the suit dismissal is proper without further pleading").

Palan does not dispute that the waiver, if enforceable, would bar his claims. Rather, he argues that the waiver was not "knowing and voluntary," and therefore that it violated the Older Workers Benefit Protection Act of 1990 ("OWBPA"), Pub. L. No. 101-433, 104 Stat. 978 (Oct. 16, 1990). The OWBPA amended the ADEA to provide in relevant part:

> (1) An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum—
>
> (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
>
> (B) the waiver specifically refers to rights or claims arising under this chapter;
>
> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
>
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
>
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
>
> (F) (i) the individual is given a period of at least 21 days within which to consider the agreement; …
>
> (G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired[.]

*Id*. § 201, 104 Stat. 983-84 (codified at 29 U.S.C. § 626(f)(1)); *see Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998) ("The OWBPA sets up its own regime for assessing the effect of

4

ADEA waivers, separate and apart from contract law."); *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 669 (7th Cir. 1998).

Palan's waiver meets the OWBPA's requirements. Section 2(a) of the waiver specifically refers to Palan's waiving his claims under the ADEA, satisfying subparagraph (B) of 29 U.S.C. § 626(f)(1); § 3(c) explicitly states that Palan did not waive any claims arising after the signing date, satisfying subparagraph (C); the waiver's opening statement makes clear that it is in exchange for severance benefits that Palan was "not otherwise entitled to receive," satisfying subparagraph (D); § 11 advised Palan in writing to consult an attorney before signing, satisfying subparagraph (E); and § 12 gave Palan 21 days to sign, and 7 to revoke, satisfying subparagraphs (F) and (G). Doc. 17-2 at 4-6. The waiver also satisfies subparagraph (A): it is written in easily understood language, and the narratives in Palan's amended complaint and briefs show that he understood at the time what he stood to gain, and lose, by signing. Doc. 7 at 11; Doc. 24-1 at 6; Doc. 30 at 5 ("my capacity for at least a lay understanding of the severance waiver/contract was not in question"); *see Lloyd v. Brunswick Corp.*, 180 F.3d 893, 895 (7th Cir. 1999) ("there is nothing unclear about the letter—it explains in no uncertain terms that Lloyd is getting a sweeter deal in exchange for waiving the very claims at issue in this lawsuit"). Accordingly, the waiver meets the OWBPA's requirements. *See Lloyd*, 180 F.3d at 895 ("the waiver here tracked, almost exactly, the[] [OWBPA's] requirements"). (Subparagraph (H) of § 626(f)(1), which is not reproduced above, does not apply to Palan's situation.)

To be sure, § 626(f)(1) sets forth only the "minimum" conditions required to find a waiver "knowing and voluntary." 29 U.S.C. § 626(f)(1). "Other facts and circumstances may bear on the question of whether the waiver is knowing and voluntary, as, for example, if there is a material mistake, omission, or misstatement in the information furnished by the employer to an

employee in connection with the waiver." 29 C.F.R. § 1625.22(a)(3). In addition, "[t]he waiver agreement must not have the effect of misleading, misinforming, or failing to inform participants and affected individuals. Any advantages or disadvantages described shall be presented without either exaggerating the benefits or minimizing the limitations." 29 C.F.R. § 1625.22(b)(4).

Palan alleges that the information ComEd gave to him in the letter accompanying the waiver contained material errors. Yet the only error Palan specifically identifies is his salary, which ComEd's cover letter said was $86,999.64, Doc. 17-2 at 2, ¶ 2(a)—a figure that Palan, in open court, stated was off by "pennies, maybe 30 or 40 cents." Palan insists that "even if the difference … was merely 10 cents," it would be material. Doc. 30 at 9. The court disagrees. The term "material" appears in many federal statutes, and courts have adopted a uniform definition: "ha[ving] a natural tendency to influence, or [be] capable of influencing, the decision." *Kungys v. United States*, 485 U.S. 759, 770 (1988) (internal quotation marks omitted); *see also United States v. Wells*, 519 U.S. 482, 489 (1997) (same); *Cottage Sav. Ass'n v. Comm'r of Internal Revenue*, 499 U.S. 554, 570 (1991) ("capacity to influence a decision"); *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008) ("natural tendency to influence [or] capable of influencing"). Palan concedes that he understood the seriousness of his decision whether to sign the waiver:

> At this point then I had only two options to consider. I was aware that my chances at 58 years old, in a terrible employment environment and with my current medical issues, of locating employment at a similar level of income would be challenging at the very least. I needed to consider accessing my 401k and/or pension savings during any job search and likely even to supplement my earnings until I could complete the process of selling my home and belongings sufficient to adjust my hard earned lifestyle to whatever the new circumstance may be. The other option of course was to at least buy a year's time to begin this long process and accept the terms of the waiver contract thus releasing the corporation, company and individuals that represented them completely from accountability for their actions (or lack of same) and the litany of other misconducts.

6

Doc. 24-1 at 6.  Would Palan really have raided his savings and retirement funds, and sold off his home and belongings, had ComEd offered 40 cents less?  Conversely, would Palan have overlooked ComEd's alleged "litany of other misconducts" for an extra quarter, dime, and nickel?  It is implausible that 30 or 40 cents—on a salary of nearly $87,000—was "capable of influencing" Palan's decision to sign the waiver.

Palan also alleges that his monthly health care premiums, which the worksheet accompanying the waiver told him would be $100.64 through the end of 2014, Doc. 17-2 at 7, actually increased by "nearly 25%" some five months after he signed the waiver.  Doc. 24 at 5-6.  (Palan acknowledged at a hearing on March 24, 2015, to have received the worksheet and cover letter that accompanied the waiver.)  It is questionable whether a difference of roughly $25 per month would be "material" against the backdrop of more than $90,000 in salary and other benefits.  Doc. 17-2 at 2, ¶¶ 2(a)-(c).  But the court need not resolve that question, because the referenced premium was not a "material mistake, omission, or misstatement," 29 C.F.R. § 1625.22(a)(3), in the first place.  For one thing, the worksheet labeled the $100.64 figure "an *estimate* of 2014 price tags only."  Doc. 17-2 at 7 (emphasis added).  Moreover, the cover letter made clear that ComEd "will pay the same portion of the costs of medical coverage (only) that it pays for active employees," and that those amounts "*will be determined from time to time* by the Plan Administrator."  *Id*. at 2, ¶ 2(b) (emphasis added); *see also ibid*. ("Your participation in Exelon's health care plans remains subject to Exelon's right to amend or terminate the plans at any time.").  In other words, ComEd never promised Palan that his health care premium payments would always remain $100.64; to the contrary, ComEd plainly disclosed that the figure was subject to change.  *See Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014) ("It would be a pretty innocuous bait and switch if the seller in our example advertised

the low-priced washing machines but added 'and by the way we may raise the price before you arrive at the store.' With such warning, what deception?").

Finally, Palan alleges that he was generally unable to receive the information or help he wanted from ComEd's human resources department in the 21 days he had to consider whether to sign the waiver. Doc. 7 at pp. 10-12, ¶¶ 6.1, 6.3, 6.6-6.9; Doc. 24 at 4-5; Doc. 24-1 at 5-6; Doc. 30 at 5-7. Apparently, Palan wanted online calculators for his pension and retirement accounts, health plan documents, and his timecards and paystubs—information or tools to which he had access while an active employee, but not after his termination. Doc. 7 at 10, ¶ 6.1. In support, Palan quotes a line from the waiver agreement stating: "If you have any questions regarding the attached, please contact Belinda Sanders"—an innocuous boilerplate that, according to Palan, imposed on ComEd "an unquestioned obligation to provide me whatever information I required, in whatever reasonable form I desired for anything short of … a sky written copy of the CEO's tax return …. [Defendants] had every obligation … to afford me whatever information I felt I needed to arrive at a 'knowing and voluntary' decision." Doc. 24 at 5.

Palan has cited, and the court has found, no legal authority for the proposition that ComEd was obligated to provide Palan with information beyond that required by the ADEA and OWBPA. Maybe Palan would have felt more comfortable had he been able to retain access to online financial tools available only to active ComEd employees, but that does not mean that his lack of access to those tools—especially given that the waiver contract listed exactly what he would get (Doc. 17-2 at 2, ¶ 2), give up (*id*. at 4-5, ¶¶ 1-2, 4-8), and *not* give up (*id*. at 5, ¶ 3)— rendered his waiver unknowing or involuntary. *See Lloyd*, 180 F.3d at 895 ("Lloyd, perhaps correctly, thought he was getting tossed out because of his age. But the whole point of this mess

is that he had a clear choice: he could get *some* money from Brunswick and pursue a discrimination claim, or he could waive the claim and get a lot more money.  He chose the latter.  His unsubstantiated assertion that he took this step with his eyes shut is not enough to invalidate his waiver.").  As shown above, the waiver meets the OWBPA's requirements and is not materially inaccurate or misleading.  That is all the law requires.  *See Oberg v. Allied Van Lines, Inc.*, 11 F.3d 679, 683 (7th Cir. 1993) ("Congress has occupied this area of the law through the enactment of the OWBPA."); *Blackwell*, 152 F.3d at 673 (holding that "the highly specific requirements of OWBPA" offer "more legal protection" to workers signing waivers than "the general concept of 'knowing and voluntary' in contract law").  And to the extent Palan implies that he was coerced into signing the waiver, that argument, too, is without merit.  *See Lloyd*, 180 F.3d at 895 ("Lloyd suggests (without really stating) that he was coerced into waiving his claims because he knew he would lose his job if he didn't sign the letters.  But Lloyd was going to lose his job whether or not he agreed to waive his claims.  The only question was how much money he would walk away with.").

In sum, Palan's waiver agreement satisfies all of the ADEA and OWBPA's requirements, and his signing the agreement thus was knowing and voluntary.  So his ADEA claims are barred, as are his ADA claims, which are also covered by the waiver.  Doc. 17-2 at 4, ¶ 2(c).  This disposition makes it unnecessary to reach ComEd's other arguments in favor of dismissal.

## Conclusion

Defendants' motion to dismiss is granted and, because the ground for dismissal cannot be cured by repleading, this case is dismissed with prejudice.

April 27, 2015

_____
United States District Judge